The final case of the morning is a consolidated case 118043 and 118072, the Board of Education of the City of Chicago versus the Illinois Education Labor Relations Board at all. Are you ready to proceed? Both sides? Ready? And I notice the appellants have been given permission to split your argument. You understand you'll be responsible for keeping track of that split. Proceed. Good morning. If it please the court, counsel. I am Assistant Attorney General Sharon Purcell on behalf of the Illinois Educational Labor Relations Board. This court should reverse the appellate court and reinstate the Labor Board's final administrative decision finding that the Chicago Board of Education committed an unfair labor practice under Section 14A1 of the Illinois Educational Labor Relations Act when it refused to arbitrate grievances of the Chicago Teachers Union. Those grievances alleged that the Chicago Board violated the party's collective bargaining agreement when it placed do not hire designations in certain employees' personnel files. This case is conceptually simple. The Chicago Board instituted a new do not hire policy and took action placing notices in employee personnel files. The union filed grievances claiming contractual violations and asking the Board of Education to take a variety of actions to remedy the violation. The Chicago Board refused to arbitrate and the union filed an unfair labor practice charge alleging that the Chicago Board's refusal violated Section 14A1 of the Act. Before the labor board on the unfair labor practice charge, the Chicago Board justified its refusal by asserting two arguments. First, that the management right clause in the party's collective bargaining agreement excluded the grievances from arbitration. And secondly, that they were not arbitrable because they violated, conflicted with Section 4 of the Act which concerns subjects that parties are required to or are permitted to bargain. The Board determined that the grievances were contractually arbitrable and also statutorily arbitrable and that the Chicago Board to proceed to arbitration. Arbitration is the favored method for resolving employer-employee disputes under collective bargaining agreements and the Act requires, in fact, that every collective bargaining agreement between educational employers and employees shall have a grievance procedure that ends in final and binding arbitration. Under the Act there are two separate reasons for which an arbitration is not arbitrable. First, the contractual reason that there is language in the party agreement that specifically excludes the topic from arbitration or in the absence of such language, forceful evidence that the party is intended to exclude that topic. And second, the statutory reason which is the dispute is not arbitrable under the Act because it violates or conflicts or is inconsistent with another Illinois statute. When an employer refuses to arbitrate, it goes before the Labor Board on an unfair labor practice charge and at that point there is a known and understood traffic pattern to the procedure. And that traffic pattern is first, at this preliminary step, the Labor Board asks the parties if they doubt about the answer to that question, the grievance should go. And to answer that question, it's a preliminary, it's a very limited review that the Labor Board does. It asks whether the grievances on their face fall within the terms of the collective bargaining agreement. If the Labor Board answers yes to that question, that the grievance is arbitrable, that means the dispute goes to the arbitrator and it is there that the parties argue the merits of the grievances, they urge their interpretations of the contract, argue whether or not the contract was violated, and depending on the party's submissions to the arbitrator, the arbitrator answers yes or no. If the arbitrator answers no, there's no violation, the grievance is denied. If the arbitrator answers yes, that there is a violation, then it is at that point that the arbitrator will determine what the remedy is and the parties can urge what they believe to be the appropriate remedy to the arbitrator at that point. So it's a party cannot short-circuit the statutory process by refusing to arbitrate because the arbitrator might fashion an enforceable remedy or the parties can't enforce the contract. It is the arbitrator's role alone to answer yes or no on the merits of the grievances in the first instance and fashion a remedy for a violation, which is to say do X, Y, or Z. This grievance and arbitration process relieves the courts and the Labor Board from policing and enforcing the terms of the parties' collective bargaining agreements and they are not burdened with refereeing workplace disputes at the same time at the back end there is after the remedy, if there is a remedy, the employer can refuse to implement an award that it believes is invalid and there is review by the Labor Board at that point. The Labor Board's review then is directly reviewable to the appellate court. The board performed its statutory role in this case. It asked the question are these grievances arbitrable? It looked at the contract provision and the focus on that question is whether or not the grievances fall on their face within the collective bargaining agreement is on the grievance clause and here there was no clause in the agreement. There was no language identified that explicitly excludes the subject of the do not hire policy from the arbitration process and absent that specific exclusion there was also no forceful evidence. Therefore, the board said yes, this falls within the terms of the contract and should be reviewed. The board correctly concluded that that clause concerns what management must bargain. It's their duty to bargain. In any event, the presence of a management rights clause in a collective bargaining does not mean that grievance is inarbitrable like all of the provisions. When the parties disagree over the term of the contract, that is a question for the arbitrator. Your position is that the do not hire designation actually involved a work situation, right? The Labor is placed in the file only after a probationary teacher has been released, right? That's what the record was. And the only effect it has on the teacher's ability to be hired is whether they're going to be hired again in the future. So is that a work situation or is that a future hiring situation? But the meaning of work situation within the contract, that's a question for the arbitrator. That's precisely what an arbitrator does. And actually, there is no evidence in the record. I'm just asking you, how is that a work situation and not a future hiring situation? As Justice Borden pointed out in his dissent, the placement of the do not hire policies notices was a result from what happened during the work situation. So obviously there's a disagreement as to whether or not that could be within the definition of work situation and whether it's a disagreement about the interpretation of the contract. That goes to the arbitrator. And that's precisely what the board did. It just falls within that and it should go. And they can make that argument about when the notices are put in and whether or not it falls under the agreement when it should meet to the arbitrator. And then he'll make his decision. He may agree or disagree with either part of it. Council, doesn't the removal of this indicator, isn't it tantamount to restricting the ability of the board to decide who to hire? Your Honor, this is the procedures around that to do with that policy. So these are procedural violations and whether or not it complies with the agreement. It should always be kept in mind under that traffic pattern, whatever the arbitrator decides and the remedy is reviewable under the labor act by the labor board and the appellate would have any impact on that. You can't know it is a very preliminary step of this process because it needs to go through the process. That's the mandatory mandate. That's how these things are decided. Arbitration determines the party's rights under the terms of the existing agreement and that's all that's going on here. As to the Chicago board's criticism of the labor board for drawing a distinction between bargaining and arbitration obligations, it proposes that there is no distinction but there's no support in the law for that case, for that argument, and 25 years ago in Staunton that very same argument was rejected and that's actually the last case law on that. The Chicago board has conflated these provisions, arbitration and bargaining, throughout, but they are not the same and they fall under different provisions of the act, different under labor practice provisions, so they have different tests. A test for one is not a test for the other. Here the contract was negotiated. It provides the framework by which the employer and employees govern their workplace and it should be allowed and it must be allowed to govern the procedures for resolving disputes under it. The question at this point in their relationship is the implementation of the terms of their agreement. If they disagree, the arbitrator should referee that disagreement. And for that same reason, the labor board properly rejected the argument that the grievance is violated or conflicted with section 4 of the act concerning matters of mandatory and permissive bargaining because we're talking about enforcing the terms of an existing agreement. Arbitrability does not depend on presuming what arguments and evidence the parties will submit to the arbitrator or delving into the merits of the grievance. All that comes under the second step here. This case was only at the very first preliminary step in front of the labor board. It doesn't depend on speculating about the remedy the arbitrator might fashion. That happens in the third step of the pattern. So all of the arguments here were premature and this court should reinstate the labor board's decision and allow this dispute to proceed through the process as the act intends. If there are no other questions, I will allow my council for the union. It doesn't appear there are any more questions, counsel. Thank you. Good afternoon. May it please the court. My name is Curtis Hale. I represent the Chicago Teachers Union. I'd like to begin by addressing the question about whether or not removal of the DNH policy would restrict the board's ability in the future to make higher decisions. I think it would not. There's nothing that would cause the board not to hire or decide to hire somebody by preventing them from DNHing someone. There's no provision in this agreement that restricts the board's power to hire these individuals. And I think it's important to point out that the grievance definition in our contract is very broad. The labor board based its decision on the work situation. However, we also can grieve violations of past practice, which that is one of the issues that we are seeking to have arbitrated. Is that in the past, the Board of Education, when these PATs were not renewed for whatever reason, be it for their ratings or for being clicked off or legitimate concerns, they always had the right to apply for a new position that CPS had. Should a principal want to hire them and it goes through the board vetting process, that individual would in fact be hired to be able to continue their employment and possibly attain tenure. And the grievance arbitration provision, actually, it helps give our membership fundamental fairness, some due process rights. There's one of the grievances that's pending before the board in its court here today. It's the Gregory Best case. He is challenging the DNH decision that was imposed upon him. But he's challenging it because he was given an unsatisfactory rating that did not comply with the procedural requirements that the Board of Education agreed that they would follow prior to issuing that rating. For Mr. Best, the only way for him to clear his record of that rating is for the Board of Education to actually arbitrate this and have it arbitrated beside that dispute. The public policy in Illinois strongly favors resolution of these grievance disputes through arbitration. We just ask that the courts abide by that public policy and reverse the appellate court's decision and basically affirm the IERB's decision and remand this back for arbitration. Thank you. Thank you. Thank you. Thank you. In this case, 30 children were subject to Ms. Rago's teaching, and the principal thought it was inadequate. About 150 children were subject to Mr. Best's teaching. Also, a principal found that to be inadequate. It's the Board's management right to decide whom to hire. It's our fundamental right. We've never given that up. We've not agreed to bargain over it, or to arbitrate over it, and we're asking you to find that the IERB erred when it found that it was an unfair labor practice for us not to go to an arbitration over this right. I want to address two main points. One, the standard of review, and the second, whether the Board has discretionary authority to decide which employees to select and whether it can bargain away that authority or whether it can delegate that authority to an arbitrator. I would say that it can't. First, on the standard of review, I'd ask you to apply the standard of review you have applied in Illinois State Labor Relations Board cases, both in Freeport and Burbank. When you're talking about the interpretation of a statute, which you are here, Section 4 of the IELRA and Section 3484 of the school code, the standard of review is de novo, and you do not owe any deference to the administrative agency in this situation. That's also consistent with what the IELRB itself has found in two cases. In the CTU case from 2003 and a case of Western Springs back in 1990, the IELRB said that the courts owe no deference to agencies on matters of statutory interpretation. So I'd ask you to apply your own precedent and the IELRB's precedent to find that these are de novo issues, statutory interpretation, and nothing in the collective bargaining agreement excludes, I'm sorry, so I ask you to find that according to the IELRB cases, that whether something is substantively arbitrable is a matter of law, and it's a pure matter of law which you owe no deference to the IELRB on. On the second issue, as far as the test that's applicable here, my opponents say that Central City should not be applied because that relates to bargaining and not arbitrability. Well, I don't know how we could have been more clear, but to say in our collective bargaining agreement that we're not going to bargain over or arbitrate over our management right to decide who to select as an employee. And again, the IELRB has been inconsistent on this point. In the Prairie State College case, which is a 4th district case from 1988, the IELRB said that whether a school district refuses, well in that case it was a college, refuses to arbitrate was an unfair labor practice under 14A5. So now they're insisting it's only a 14A1 violation if you're going to refuse to arbitrate. Now they say you can't apply that Central City test, but back in the Prairie State case, they said it was a violation of A5 also. And I think if you look at the plain language of A5, it talks about the discussion of grievances. So I think the Central City test is the one that should be applied here as the IELRB found in Prairie State. If there's a dispute about whether a matter is subject to arbitration and the parties can't agree, who decides that? If it's something, you have to look at the contract. And here the contract is clear that we have not given up our management right to select and to hire. So what body would decide that? I mean, obviously you have a right to take that position, but who has to ultimately make that decision? If they file an unfair labor practice complaint, the IELRB will have in the first instance the right to make that decision to decide whether it's arbitrable. But then we have a right to, as we did in this case, to say no, we're not going to arbitrate it because Section 4 of the IELRA and Section 3484 of the school code say we don't have to. And then we have the right to come to court and to have this court review de novo whether you believe that that's the case. And finally, I'd like to call this court's attention, which I didn't in my brief, to this court's own case in Illinois Education Association, which is a 1975 case before the IELRA was adopted. And it was very similar to this case. And it said that the board's discretionary authority to hire can't be restricted by a collective bargaining agreement or delegated to an arbitrator. And I believe that's exactly what we're asking this court to find today. The two appellate cases that have followed that very closely are the Cobden case from the 1st District in 2012 and the Westland case from the 5th District back in 1975. And I think the language in that case is really good. It said the board can't, by means of a collective bargaining agreement, destroy the flexibility accorded to school districts to discharge probationary teachers. That's what we're talking about. We have a right to try out these probationary teachers for a couple of years. That right is really important when the probationary period has been reduced from four to three years. We have the right to try them out and to allow only those who are most qualified to become tenured. What's your side on that case? The Westland case? Yeah. It's a 5th District case from 1975. I can... That's okay. No, I can give it to you. I actually wrote all these cases in it. I can find it. We'll find it. Don't worry about it. It's right here. Nope, it's not. 1975. I apologize. What was the name of the case again? Westland Education Association v. Board of Education. A 5th District case from 1975 with Justice Green decided the case. If you don't have any other questions, I ask you to affirm the appellate court's decision. Thank you. Your Honors, with regard to the standard of review, it is only under the Educational Labor Relations Act. The State Labor Relations Act is a different scheme. Under the Educational Labor Relations Act, a refusal to arbitrate proceeds through the prism of an unfair labor practice. The General Assembly intended that the Labor Board look at this by its expertise, by the facts, what we have here are the historical facts of what the Board found these grievances to be about and apply it to determine whether or not there was a violation of the unfair labor practice provision section 14A1. That's what it did. So the Board should be granted deference on its unfair labor practice finding. The Board's interpretation of the act is entitled to deference. Its interpretation of its enabling statute is entitled to great blatant deference. It has the expertise. It is charged with administering this act. The matter came to the Labor Board, didn't it, on a stipulation of facts? It was a stipulated record. What the parties gave to the Board was really what they had given, what their grievance process was at that point. This is what we're talking about. This is so preliminary here. So they gave the demands for arbitration. There's very little. So if you're talking about whether or not somebody was a good teacher or whether they deserved to be renewed or non-renewed, there's no record on any of that. All of that is at step two of this traffic pattern because it's the merits of the grievances. And then at step three, the arbitrator will make that determination as to all of these arguments and grant the grievance, deny the grievance based on what the parties argued to him, and they can argue their remedies. But on the record, the Labor Board really just applied the facts to the terms of the collective bargaining agreement, right? The Labor Board does. The first step is very preliminary. It's very limited because the act intends in labor law, it's bedrock labor law, that it intends parties' disputes under collective bargaining agreements to proceed through arbitration. Parties bargain their agreements knowing that they can't possibly bargain every term of the agreement. And so they're going to have disputes about what it means and how it is to be enforced, and that includes every term in the agreement. The management rights clause, the grievance clause, every term. Interpretation is for an arbitrator. Labor boards and courts, that is not their role. Their role is at the end of this process. If the award is not enforceable for some reason, it violates some statute, then at that point, that's when that is corrected. So the idea that there's some, that this is going to have some huge effect, what the effect will be is every time there's a grievance filed, or maybe not every time, but it could be a good temptation, there's a grievance filed, or we have a management rights clause that says, we don't have to bargain something. Which is, of course, a different issue than whether or not you have to arbitrate it, because now we're talking about a dispute under the agreement as to how it's enforced. But now we have, we're going to go to the labor board, we're going to refuse, we're going to go to court, we're going to have all of this without any record as to really what the grievance, you know, surrounding the grievance is. Who these people are, what the situations are, what the contract means, would the parties believe it to mean, and then without an arbitrator, who that's their expertise too, is, you know, they understand the workplace that these disputes come out of. So that's what we're talking about here, just allowing this process to continue, and when it, you know, as it continues through, when it gets to the end, if there's a problem, it's corrected at that point. Central City has never then applied to an argument to whether or not parties have to arbitrate an already bargained agreement. Central City was devised by this court to resolve the tension in the act between Section 10, which requires employers to bargain wages, hours, terms, and conditions of employment, with Section 4 that says management is not required to bargain over matters of inherent managerial authority. They're not required. They are permitted. So if they agree to a bargain to something and they come to an, I mean, if they agree in bargaining to something that's only permissive and not mandatory, that's enforceable under the contract as well. I mean, so Central City, these are two separate. Bargaining is for new terms, arbitration, we're enforcing the terms of the agreement. So you're asking that we limit Central City decisions to collective bargaining and not arbitration? Yes, because arbitration enforces the already existing agreement. The parties are disputing something under the life of their agreement already. They're not asking, oh, do we have to bargain? We don't want to bargain something. They're not asking that. The question is does this action that was taken violate the terms of our already existing agreement that governs our workplace and that we all understand governs our workplace. So there's absolutely no, no, Central City has never been the test for determining arbitration. It's always been is it contractually arbitrable based on are the grievances fall on their face within the terms of the collective bargaining agreement. And it's very limited and the exceptions are very narrow because disputes are intended to go through this arbitration process, step by step, one, two, and three, and then final review when necessary. Perry State College, the appellate court disagreed with the labor board. So it has since then always been it's a refusal to arbitrate is a section 14A1. It is not a violation of the duty to bargain. And without getting into all of that, as I see that I'm taking up my co-counsel's time. Do we have any other? No other questions. Thank you. I just wanted to make one final point. There is no provision in our collective bargaining agreement that issues this case that is infringing on or restricting the board's, unfettered rights other than abiding by fundamental fairness. Unless there are other questions. Okay. Cases number 118043 and 118072, Board of Education of the City of Chicago versus the Illinois Educational Labor Relations Board et al, will be taken under advisement. They're consolidated. As agenda number 17, Ms. Purcell and Mr. Hale, Ms. Lauder, thank you for your arguments today. You are excused at this time. Marshal, the Supreme Court stands adjourned until 930 tomorrow morning.